UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60070-CIV-DIMITROULEAS/Snow

MORTEN STEEN-JORGENSEN
and STEEN GROUP, LLC,

    Plaintiffs,

v

BULLGUARD LIMITED, NEDKO
IVANOV, and GEORGE SIDJIMKOV,

    Defendants.
_____/

BULLGUARD LIMITED,

    Counter-Claimant,

v.

STEEN GROUP, LLC, and MORTEN
STEEN JORGENSEN,

    Counter-Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on BullGuard Limited's Motion for Order to Show Cause why Morten Steen-Jorgensen Should Not be Held in Contempt for Violation of the Preliminary Injunction, and to Clarify the Scope of the Preliminary Injunction (DE 45), which was referred to United States Magistrate Judge Lurana S. Snow for Report and Recommendation. An evidentiary hearing was held before the undersigned on August 20, 2013.

### I. PROCEDURAL HISTORY AND RELEVANT FACTS

The Plaintiffs filed this action in state court seeking a Declaratory Judgment and alleging Breach of Contract against BullGuard America's, LLC ("BGA") and Breach of Fiduciary Duty against Bullgaurd Limited ("BullGuard"). The Complaint was removed to this Court on

January 11, 2013 (DE 1), after which the claims against BGA were remanded to state court. (DE 15) On April 8, 2013, BullGuard filed its Answer and Counterclaims alleging 1) Breach of Fiduciary Duty against Steen-Jorgensen and Steen Group (Counts I and II); 2) Trademark Infringement against Steen Group (Count VI); Common Law Trademark Infringement against Steen Group (Count VII); and seeking an Accounting against Steen-Jorgensen and Steen Group (Count III); an Injunction against Steen-Jorgensen and Steen Group (Count IV); and a Declaratory Judgment against both Steen-Jorgensen and Steen Group (Count V). (DE 20)

On September 1, 2009 BullGuard and Steen Group formed BGA and entered into a Limited Liability Company Operating Agreement. BullGuard markets and sells computer and mobile security software products. BGA distributes BullGuard's software pursuant to a Distribution Agreement between BullGuard and BGA. BullGuard Limited is the majority member of BGA holding 51% of the capital interest. Steen Group is the managing member holding 49% of the capital interest. BGA has three managers, two elected by BullGuard, and one, Morten Steen-Jorgensen ("Steen-Jorgensen"), elected by Steen Group. Steen-Jorgensen was also elected Chief Executive Manager ("CEM") of BGA pursuant to the terms of the Operating Agreement.

On August 30, 2012, at a meeting of the members of BGA, Steen-Jorgensen resigned as CEM with an effective date of December 31, 2012. The parties dispute whether Steen-Jorgensen's resignation was voluntary and unconditional. After the resignation, BullGuard exercised its purported right to terminate the Distribution Agreement between BullGuard and BGA. On November 12, 2012, BullGuard gave BGA written notice of termination of the Distribution Agreement with an effective date of August 31, 2013.

On the same day BullGuard filed its Answer and Counterclaims, it filed a Motion for Preliminary Injunction asking the Court to enjoin: 1) Steen-Jorgensen from acting as CEM of BGA after his resignation; 2) Steen Group from allowing its manager (Steen-Jorgensen) to continue to act as CEM of BGA; and 3) Steen Group from the unauthorized use of the BullGuard Marks. (DE 21)

The Court granted the motion for preliminary injunction in part, preliminarily prohibiting Steen-Jorgensen from continuing to act as Chief Executive Manager of BGA, and prohibiting Steen Group from using in commerce any reproduction, counterfeit, copy, or colorable imitation of BullGuard's marks in connection with the sale, offering for sale, distribution, or advertising of any good or services. (DE 40) The preliminary injunction became effective on July 9, 2013, when BullGuard posted a security bond.

BullGuard filed the instant motion, which requested expedited treatment, on August 12, 2013. According to BullGuard, Steen-Jorgensen has continued to act as CEM in violation of the Preliminary Injunction. BullGuard also alleges that Steen-Jorgensen has refused to cooperate in the selection and appointment of an interim CEM, and has refused access to BGA books and records. Bullgard asks the Court to hold Steen-Jorgensen in contempt for continuing to act as CEM when enjoined from doing so, and further asks the Court to clarify that its order contemplated the appointment of an interim CEM to manage the daily affairs of BGA.

## II. EVIDENCE PRESENTED[1]

Nedko Ivanov testified on behalf of BullGuard. Mr. Ivanov is the CEO of BullGuard, and also is one of the two managers elected by BullGuard to manage BGA. After BullGuard posted the injunction bond, Mr. Ivanov undertook the task of searching for candidates to serve as interim CEM of BGA. In order to do so, he sent an e-mail to the other two managers (at that time, George Sidjimkov and Morten Steen-Jorgensen) for the purpose scheduling a managers call in order to appoint an interim CEM for BGA, and proposing two candidates for consideration. Steen-Jorgensen responded that he was unavailable on any of the three proposed dates for the managers call, and

---

[1] Both parties rely on the papers filed in support of their respective positions which include the Declarations of Nedko Ivanov (Defendants' Exhibit "A"), and Morten Steen-Jorgensen (attached to Plaintiff's Exhibit "1"), and the Supplemental Declaration of Nedko Ivanov (Defendants' Exibit "B"). Both sides had the opportunity to cross examine the witnesses at the hearing. The evidence presented as described in this Report and Recommendation is derived from the parties' Declarations as well as their testimony in Court.

never responded to a follow up e-mail inquiring as to any activities of BGA that could not be conducted without an acting CEM.

After the August 7, 2013 replacement of George Sidjimkov with Seth Heller as one of BullGuard's managers of BGA, Mr. Ivanov sent another e-mail to the managers advising of the change, and inviting them to attend a managers call on August 12, 2013 to appoint an interim CEM. Steen-Jorgensen responded by e-mail on August 8, 2013, protesting any meeting that would purport to elect a new CEM because he continued to dispute that he voluntarily resigned from the position. He also suggested that any such CEM must also be a manger as required by the Operating Agreement, rather than an outsider. The August 8, 2013 e-mail was followed by another on August 12, 2013, reiterating Steen-Jorgensen's position that he did not voluntarily resign as CEM, and further pointing out that the Operating Agreement requires that the appointment of a CEO must be by unanimous vote of the mangers. Steen-Jorgensen then stated that he would not vote for the candidate proposed by Mr. Ivanov.

Mr. Ivanov and Mr. Heller proceeded with the mangers call. Upon Mr. Ivanov's nomination of Mr. Heller, followed by a vote of the two managers present, Mr. Heller was appointed interim CEM of BGA. Mr. Ivanov then distributed the minutes of the meeting, which elicited another objection from Steen-Jorgensen via e-mail. Steen-Jorgensen denied that either he or Steen Group declined to attend the meeting. Rather, he objected to the meeting occurring at all unless his position that a unanimous vote of all managers was required to elect a CEM was acknowledged as correct. Given that position, he stated that his manager vote should have been recorded as "opposed." He also stated that if section 4.1 of the Operating Agreement was controlling as BullGuard contended, any vote needed to be by the members rather than the managers. He further objected based upon his position that the Operating Agreement contains no provision for an interim CEM, nor does it require that company actions be taken only by a CEM.

According to Mr. Ivanov, repeated requests for access to the books and records of BGA, including the management account cash flow statement and balance sheet for the period of

2013 have been refused. Until the end of 2012, Steen-Jorgensen provided management accounts on a monthly basis. Although BullGuard recently received the first page of bank statements through June of 2013, it has not received access to the books and records of BGA to which it asserts it is entitled pursuant to the Operating Agreement. Mr. Ivanov concedes that BullGuard also refused until recently to provide documents it was required to provide to BGA, but argues that the Distribution Agreement was terminated as of Steen-Jorgensen's resignation as CEM of BGA, relieving BullGuard of the obligation to do so.

Mr. Ivanov contended that he relied on Paragraph 4.1 of the Operating Agreement with respect to the election of Mr. Heller as Interim CEM. The Operating Agreement was admitted into evidence as Defendant's Exhibit "D". It states in pertinent part:

> A Member holding a majority of the capital interests in the Company, as set forth in Exhibit 2 as amended from time to time, shall elect two Managers. The remaining Members shall by Vote elect one additional Manager. The Members shall by Majority Vote elect a Chief Executive Manager.

BullGuard interprets Paragraph 4.1 to give BullGuard two votes and Steen Group one in the election of CEM. Therefore, BullGuard's two votes were all that was necessary to elect Mr. Heller interim CEM.

Although, Mr. Ivanov conceded that Paragraph 4.3 of the Operating Agreement requires that actions contained in Schedule 1 of the Agreement, including the appointment or dismissal of the Company's chief executive officer ("CEO"), be approved only by the agreement of all three managers, according to Mr. Ivanov, CEO is not the same as CEM and BGA has never had a CEO. Therefore, Paragraph 4.3 is inapplicable.

The Distribution Agreement between BullGuard and BGA was admitted into evidence as Exhibit "C". It states in pertinent part:

> ¶2.1 The Manufacturer hereby appoints the Distributor as an exclusive Distributor for the resale of the Product in the Territory, and the Distributor agrees to act in that capacity, subject to the terms of this agreement.

5

Morten Steen-Jorgensen testified on behalf of the Plaintiffs[2]. He testified that he became CEM of BGA in September of 2010. According to the Plaintiffs, Steen Group has provided most of the personnel, office space and administrative services for BGA at agreed annual rates through 2012. There has been no increase in expenses in 2013. It is Steen-Jorgensen's position that the Preliminary Injunction does not prohibit him from continuing to act as manager for Steen Group with respect to the Operating Agreement. He contends that although the injunction does not directly address the issue of a termination date for the Distribution Agreement, he points out that the Court utilized the August 31, 2013 date cited by BullGuard in its notice of termination in calculating the security bond required of BullGuard. Therefore, although Steen-Jorgensen maintains his position that the Distribution Agreement has never been legitimately terminated, he argues that at a minimum such termination would not occur prior to August 31, 2013.

Steen-Jorgensen performed the following duties as CEM prior to December 31, 2012:

1. Preparation of budget;

2. Profit and loss management to meet/match budget;

3. Sales and channel management to new and current customers;

4. New business development;

5. Public relations and media interviews;

6. Staff management;

7. Reporting to the Board; and

8. Competitive and industry review and analysis to keep current.

From January 1, 2013 until July 9, 2013, Steen-Jorgensen's activities as CEM were limited because of BullGuard's restrictions on or denial of product supply, support, financial reporting, access to computer system and support to offline customers. However, he continued to perform the following duties as CEM:

---

[2] In addition to Mr. Steen-Jorgensen's Affidavit which was attached to the Plaintiffs' response to the Defendant's motion, the Plaintiffs adopted the recitation of facts contained in the response for purposes of the hearing.

    1. Management of ISP customer Curatel;

    2. Marketing and sales of the BullGuard product licenses remaining in inventory;

    3. Staff management;

    4. Response to media and customer requests; and

    5. Ad hoc/limited reporting of BGA financial activities to BullGuard.

  Since July 9, 2013, Steen-Jorgensen asserts that he has ceased acting as CEM for BGA in compliance with the Preliminary Injunction. His intent with respect to the e-mails exchanged regarding the managers call was to make sure that his participation in discussions about possible board meetings relating to the appointment of an interim CEM would not waive any argument he intends to advance at the trial on the merits in this action. The language he used in the e-mails was on the advice of counsel.

  According to Steen-Jorgensen, Roxana Cini, who has worked for Steen Group on behalf of BGA as its CFO for approximately three years, has continued her duties which have kept BGA running since July 9, 2013, in the absence of a CEM. Steen-Jorgensen has only infrequently visited the BGA offices since then to conduct the business of Steen Group. Since Ms. Cini is not performing any new duties, Steen-Jorgensen does not believe that the Managers were required to approve. He testified that he has not given her direction or supervision after July 9, 2013. Ms. Cini's duties include:

    1. Bank and credit card reconciliation;

    2. Invoicing and maintaining customer account statements;

    3. Managing accounts payable;

    4. Payroll, including preparation of payroll tax returns;

    5. Preparation and evaluation of yearly budgets compared to actual figures;

    6. Preparation of monthly financial reports, reviewing year end information and coordinating with CPA for accountant preparation of annual tax returns.

Steen-Jorgensen contends that because the Preliminary Injunction does not prohibit him from continuing to act as a manager/member of BGA, he continues to be authorized to perform certain functions as described in the Operating Agreement. Paragraph 4.3 states in pertinent part:

> **POWERS OF MANAGERS**. The Managers are authorized on the Company's behalf to make all decisions as to (a) the sale, development lease or other disposition of the Company's assets; (b) the purchase or other acquisition of other assets of all kinds; (c) the management of all or any part of the Company's assets; (d) the borrowing of money and the granting of security interest in the Company's assets; (e) the pre-payment, refinancing or extension of any loan affecting the Company's assets; (f) the compromise or release of any of the Company's claims or debts; and (g) the employment of persons, firms or corporations for the operation and management of the company's business. In the exercise of their management powers, the Managers are authorized to execute and deliver (a) all contracts, conveyances, assignments leases, sub-leases, franchise agreements, licensing agreements, management contracts and maintenance contracts covering or affecting the Company's assets; (b) all checks, drafts and other orders for he payment of the Company's funds; (c) all promissory notes, loans, security agreements and other similar documents; and (d) all other instruments of any other kind relating to the Company's affairs, whether like or unlike the foregoing. However, the actions contained upon the attached schedule 1 may be approved only by the agreement of all three Managers.

Steen-Jorgensen contends that he has not undertaken any Schedule 1 actions unilaterally. However, he asserts that the actions of Mr. Ivanov and Mr. Heller in electing Mr. Heller interim CEM violated the mandate that Schedule 1 actions be unanimous because Schedule 1 lists the dismissal or appointment of a CEO as an action which requires the agreement of all three managers. In support of his assertion that CEO is the same as CEM for purposes of the Operating Agreement, Steen-Jorgensen testified that while working for BGA, he was provided business cards by BullGuard which identify him as BGA's Chief Executive Officer.[3] Howerver, he has not utilized his business cards since July 9, 2013.

Paragraph 4.9 of the Operating Agreement states in pertinent part:

> **RECORDS**. The Managers shall cause the Company to keep at its principal place of business the following:

---

[3] A sample business card was admitted into evidence as Plaintiffs' Exhibit "2".

> (c) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years;
> (d) copies of any financial statements of the limited liabilty company for the three most recent years.

Paragraph 4.6 states:

> **COMPANY INFORMATION**. Upon request, the Managers shall supply to any member information regarding the Company or its activities. Each Member or his authorized representative shall have access to and may inspect and copy all books, records and materials in the Manager's possession regarding the Company or its activities. The exercise of the rights contained in this ARTICLE 4.6 shall be at the requesting Member's expense.

Steen-Jorgensen concedes that he participated in the decision, through counsel, to not provide BullGuard with access to BGA's books, but asserts that he was acting as a manger when he did so, There was no vote of the managers with respect to that decision, however.

Steen-Jorgensen also testified that he has not taken any actions with respect to BGA bank accounts since the Preliminary Injunction was entered, but has not informed the bank that he is no longer authorized to sign checks as CEM, nor has he removed himself as signatory. He believes he is the only signatory, but he permits Ms. Cini to do the banking online.

BGA bank account records were admitted into evidence as Defendants' Exhibit "E". The first page of the statements from April, May and June of 2013 each contain account instructions indicating that the account has been pledged to secure an obligation or is guaranteeing the obligations of another account. There was no such pledge on the account prior to April as evidenced by the March 2013 statement which was admitted into evidence as Defendants' Exhibit "F". After BullGuard requested an explanation, Steen-Jorgensen explained the pledge was to secure a money market account, which was also a BGA account. He has since closed the money market account and removed the pledge, which he testified would be indicated in the August statement. He concedes this was done after July 9, 2013.

In rebuttal, Mr. Ivanov testified that BullGuard was never provided copies of statements from the money market account, nor was it provided any documentation regarding the pledge.

### III.  RECOMMENDATIONS OF LAW

A finding of civil contempt for the willful disregard of the authority of the Court may be made only upon a showing that the contempt is clear and convincing. Georgia Power Company v. National Labor Relations Board, 484 F.3d 1288, 1291 (11th Cir. 2007) citing McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000). "The evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order. Id.

"In determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard. " Id. citing Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1296 (11th Cir. 2002).  Any ambiguities or uncertainties in the order should be construed in the light most favorable to the person charged with contempt. Id. citing NBA Properties v. Gold, 895 F.2d 30, 32 (1st Cir. 1990).

The parties do not dispute that the Preliminary Injunction entered by the Court on July 1, 2013 is valid and lawful.  Nor do they dispute that its clear and unambiguous language prohibits Morten Steen-Jorgensen from acting as BGA's CEM after July 9, 2013.  Rather, Steen-Jorgensen contends that he has neither claimed that he continues to be CEM of BGA, nor acted as though he is.  According to Steen-Jorgensen, the limited actions he has taken with respect to BGA since July 9, 2013 are not in violation of the Preliminary Injunction because it does not prohibit him from continuing to act as a manager of BGA.

BullGuard has not shown by clear and convincing evidence that Steen-Jorgensen's e-mails regarding the managers meetings were an attempt to continue to assert authority as CEM of BGA, rather than his attempt to preserve his position that he did not voluntarily resign as he explained.  To the extent Steen-Jorgensen has continued to act as a manager of BGA, he has been operating under a good faith belief that the Distribution Agreement does not terminate until at least August 31, 2013, based upon the Court's utilization of that date in calculating the security bond.

Further, BullGuard has not shown by clear and convincing evidence that the limited actions Steen Jorgensen has taken since July 9, 2013, including the closing of a BGA money market account secured by the BGA bank account, and participating in a decision through counsel not to provide access to BGA books and records, were actions which could only have been taken by Steen-Jorgensen acting as CEM of BGA.  The Operating Agreement gives rather extensive authority to managers, including among other things, the management of company assets.[4]  Even if Steen-Jorgensen was no longer permitted to remain signatory on BGA accounts as CEM, he arguably continued to have authority to manage the accounts as a Manager. In fact, other than closing the money market account to address BullGuard's concerns, Steen Jorgensen testified that Roxana Cini has been doing the company's banking online and otherwise performing her usual duties in order to keep BGA running.  Finally, Steen-Jorgensen also testified that he has infrequently visited the Davie, Florida offices where BGA's office space is located since the injunction became effective, and then only to conduct Steen Group's business.  The evidence presented simply does not support a finding of a willful disregard of the Court's order.

Although BullGuard seeks an order clarifying that the Preliminary Injunction contemplates the appointment of an interim CEM, the Order does not specifically require it.  In fact, BullGuard did not explicitly seek this relief when it filed its motion for preliminary injunction.  To the extent it is seeking such relief now, it may move to amend the Preliminary Injunction.

## IV. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that:

1. The Court not hold Morten Steen-Jorgensen in contempt of the Preliminary Injunction entered on July 1, 2013.

---

[4] The parties disagree about how the Operating Agreement should be construed with respect to a number of its provisions. The Court takes no position on the correct construction of the agreement, and merely notes that it could be construed as Steen-Jorgensen argues.

2. Defendant BullGuard Limited's Motion to Clarify the Scope of the Preliminary Injunction (DE 45) be DENIED WITHOUT PREJUDICE to re-file as a motion to amend the preliminary injunction.

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 27th day of August, 2013.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE


Copies to:

All Counsel of Record

The Honorable William P. Dimitrouleas
United States District Judge